UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE


| | | |
|---|---|---|
| CHRIS LANDIN and CARMEN LANDIN, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18-CV-380-DAD |
| | ) | |
| vs. | ) | MOTION TO DISMISS |
| | ) | |
| VISALIA UNIFIED SCHOOL DISTRICT; | ) | |
| IRENE DELCID; JATHOR SEE; SHANNON | ) | |
| TAYLOR; and DEDE SOMAVIA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Fresno, California          Tuesday, September 18, 2018




REPORTER'S TRANSCRIPT OF PROCEEDINGS










KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiffs:          **PETER SEAN BRADLEY**
                            Attorney at Law
                            7045 North Fruit Avenue
                            Fresno, California 93711


For the Defendants:         Johnson, Schachter & Lewis
                            BY:  **KELLIE M. MURPHY**
                            2180 Harvard Street
                            Suite 560
                            Sacramento, California 95815

1   Tuesday, September 18, 2018                    Fresno, California

2   10:40 a.m.

3         THE CLERK:  Court calls item number four.

4   1:18-CV-380.  Chris Landin and Carmen Landin versus Visalia

5   Unified School District, Irene Delcid, Jathor See, Shannon

6   Taylor and Dede Somavia.  Motion to dismiss.

7         THE COURT:  Please state your appearances.

8         MR. BRADLEY:  Yes, Your Honor.  This is Peter Bradley

9   appearing on behalf of the responding parties, the Landins.

10        MS. MURPHY:  Good morning, Your Honor, Kelly Murphy

11  appearing on behalf of the moving parties, all defendants.

12        THE COURT:  Good morning.  This is an unusual and

13  difficult case.  Obviously, based upon the underlying facts,

14  very difficult for all involved.

15        But Mr. Bradley, the theory of liability, with

16  respect to the only federal claim before the Court, seems to

17  me to be very tenuous.  I understand the general notion of the

18  theory, but, at least from my initial review of the complaint

19  and your arguments in opposition to the motion to dismiss, it

20  does seem to me that there is a serious question about whether

21  you alleged sufficient facts at this point to draw the

22  connections between the harm alleged and the acts of any

23  defendant.

24        You've stated in -- or it's stated in the opposition.

25  I think it was actually signed off on by Mr. Cornwell.  I

4

1   don't know if you participated in the drafting, drafted it

2   yourself.  But you suggested several times during that

3   opposition brief that you believe additional facts can be

4   alleged.

5          And I guess my real question is:  Are there

6   additional facts that you, in good faith, believe will provide

7   further explanation linking the named defendants to the

8   constitutional violation alleged and who, under those facts,

9   would be responsible for the harm suffered?

10          MR. BRADLEY:  First of all, I think we've fairly well

11  laid out the claim against the individual defendants.  It may

12  not be -- it may be the case that there's a whole bunch of

13  material that's been alleged and it may not be apparent.

14          For example, Taylor was the safety official at the

15  school.  She was the person who, on the one hand, received

16  information about expected attacks.  She was the person who

17  attempted to discipline Gloria for defending herself.  And

18  there are other facts alleged.  She was the one who failed to

19  take steps when videos were published.  That's all alleged

20  against Taylor.  And that would seem to be sufficient evidence

21  of causal conduct leading to the suicide and also deliberate

22  indifference as to Taylor.

23          THE COURT:  Well, let me back you up.  What is the

24  allegation of the complaint that links any of the conduct that

25  you complain of to the decedent's suicide?  Is it merely that

1    these two incidents occurred eight months apart at school and

2    that, thereafter, plaintiff committed suicide?  And from that,

3    plaintiff's claim is that an inference should be drawn that

4    those events are linked together?  Is there anything else?

5            MR. BRADLEY:  There's a lot else.

6            THE COURT:  Tell me what it is.  Tell me what you've

7    alleged in the complaint.

8            MR. BRADLEY:  Okay.  So in paragraph 25, we have

9    alleged that the parents told the school, and

10   specifically -- I don't know if it specifically alleges

11   Taylor -- it says "the DMS administration" -- about one of the

12   fights and nothing was done.  It alleges that the defendants

13   were aware of bullying that was going on at the school and

14   that Gloria was the -- was one of the victims of the bullying.

15           It alleges that the defendants took steps that

16   positively identified Gloria was a snitch and caused her to be

17   targeted for further mistreatment.  It alleges that Taylor

18   attempted to suspend Gloria a couple of days before her

19   suicide.  It alleges that there was a publication of a video

20   that exposed Gloria to mocking and embarrassment.  And the

21   defendants, the administration of the school, failed to take

22   any steps there.  It is not simply two incidents eight months

23   apart.  It was the environmental situation that Gloria was

24   exposed to for two years.  And that's what's laid out in the

25   complaint.

1  THE COURT:  And that is linked to her suicide by what

2  allegation of the complaint?

3  MR. BRADLEY:  It's alleged that these -- that this

4  environment, these actions were the cause of Gloria's suicide.

5  THE COURT:  And the factual allegations supporting

6  that claim are?

7  MR. BRADLEY:  All of the allegations of the

8  environment, defendants' indifference and failure to remedy

9  the situation with knowledge that this is going on.  It is an

10  inference.  It's an evidentiary decision for a jury to make

11  whether or not there was a causal connection.  At trial we'll

12  have an expert witness talk about teen psychology.  It's

13  actually 13-year-old psychology.

14  THE COURT:  Don't you have to allege some factual

15  connection between the alleged acts of the defendant and the

16  constitutional violation that's being claimed?  Some factual

17  connection.

18  MR. BRADLEY:  And I believe we've done that.  We

19  have -- the constitutional violation is the complete

20  disruption of familial relation in the suicide.  The cause of

21  the complete disruption resulting from the suicide is the

22  environment of the school that the defendants created.

23  THE COURT:  Well, I think we're --

24  MR. BRADLEY:  -- allegations.

25  THE COURT:  I think we are either talking past each

1   other or we're involved in a circular exchange.  I think that

2   what you're telling me is that the answer to your question,

3   judge, is we have no additional facts that we can allege and

4   our claim is based on the timing of the events and the

5   inference that we wish to have drawn therefrom and no other

6   specific factual allegation.

7           MR. BRADLEY:  I believe that's correct.  Although

8   I'm -- I'd like to -- I would like to get a better feeling on

9   what we mean by "cause" here.  Are we looking for a causal

10  mechanism whereby we say it triggered her psychologically in

11  such a way that -- that the defendants' deliberate

12  indifference triggered her psychologically, thereby resulting

13  in her suicide.  We can certainly put that in.  That's

14  presumably what an expert would testify to.

15          THE COURT:  Well, for instance, a factual allegation

16  of a note that attributed the act to what was occurring at

17  school.  A discussion with a counselor.  A discussion even

18  with the plaintiffs in this action.  Some factual allegation

19  that links the suicide to the events that you're basing your

20  claim on.  Other than there was an attack -- your position,

21  this went on for two years, there was an attack eight months

22  at school -- a fight eight months before the suicide and then

23  another fight two months -- or two weeks, approximately, prior

24  to the suicide with what we think was unfair responses,

25  inappropriate responses to both.  And from those

8

1   circumstances, those allegations are sufficient to -- in and

2   of themselves to state a claim for the Fourteenth Amendment

3   violation, depravation of familial association.  We don't need

4   to allege anything more.

5         Because, I mean, if that's your position, maybe this

6   is a really dispositive motion.  If I agree with you, then the

7   case proceeds.  If I disagree with you, the Fourteenth

8   Amendment claim is dismissed, the Court declines to exercise

9   supplemental jurisdiction and the case goes to state court if

10  you wish to proceed on the state law claims.  If that's what

11  you're telling me, that, judge, don't bother granting leave to

12  amend because we -- this is all we've got.

13        MR. BRADLEY:  Well, let me say the following.  I

14  think the answer is we don't have a note, we don't have a

15  conversation that I'm aware of now.  And so I could not make

16  that representation to the Court.  So -- but I -- so if it's

17  the -- if it's the issue of this cause of action, then these

18  are the facts that we have for the purpose of this federal

19  cause of action.

20        But I -- before I throw in the towel, if I might, if

21  the sum and substance of our claim was a fight eight months

22  before, a fight at the time and a suicide, then I could see

23  the lack of causal connection.  But that's not what we have.

24        We have a fight that's -- it's not just a fight, it's

25  a series of actions beforehand, a warning and a failure to

1  protect.  It's eight months of harassment and bullying that

2  the defendants were aware of.  It's a video that was published

3  with no response by the defendants.  It was a -- it was a --

4  it was an effort -- things were done by the defendants that

5  defined the child as a snitch and made her be targeted for

6  more actions.  It was a failure to advise the parents of their

7  legal rights.  It was another warning with a complete failure

8  to protect the child.  It was an attempt to expel her.  It was

9  another publication of a video showing the fight and a failure

10  to respond.  Something more than two fights eight months

11  apart.

12        So but to answer your question, Your Honor, as much

13  as I hate to say it, we've alleged the facts on this cause of

14  action that we have.

15        THE COURT:  Ms. Murphy, do you want to add anything

16  on the discussion that I've been having with Mr. Bradley?

17        MS. MURPHY:  Your Honor, just briefly.  I agree and I

18  believe you've correctly pointed out that there is not -- that

19  there is no factual allegations that would sufficiently allege

20  any causal connection between anything -- the very limited

21  allegations against these individuals and GL's suicide.

22        And it's not enough to simply say that the

23  environment of this school caused her suicide.  That's a

24  conclusion.  That's not a factual allegation.  It's not enough

25  to say, we'll present expert testimony at trial establishing

1  this causal connection.  There's simply no facts that

2  establish the causal connection.

3        And I would also point out that, in addition to the

4  absence of those factual allegations, there are very, very few

5  allegations that are against these individuals at all.

6  There's conclusory allegations that there was ongoing bullying

7  for two years.  But if you look at what specifically alleged

8  against each individual, Ms. Somavia is mentioned by name

9  exactly once, I believe, where there's any factual

10 allegations.  And that's with respect to comments that were

11 made after the death.

12        Ms. Delcid is mentioned by name very vaguely and

13 generally in a couple of paragraphs, paragraphs 26 and 29,

14 that have only conclusory allegations that the, quote,

15 "defendants" collectively allowed G.L. to be bullied and that

16 parents -- and it doesn't even specify that it was GL's

17 parents -- reported this activity to the administration.

18 There's nothing to say who reported what when, to who.  And

19 then with respect to Ms. Delcid, there's the comments

20 allegedly made after the death.

21        With Mr. See, he's mentioned by name, again, in those

22 very general allegations in the two paragraphs I just

23 mentioned.  And then there's another conclusory allegation

24 against him that complaints to him resulted in no remedial

25 action.  Again, what complaints?  When were they made?  What

1    were they of?

2            If these are all of the facts and that's been

3    represented to be all of the facts alleged, there's simply not

4    enough.

5            With respect to Ms. Taylor, the factual allegations

6    actually establish that she did impose discipline with respect

7    to the second incident that happened in February of 2017.  So

8    none of this conduct -- in addition to there being no factual

9    allegations establishing a causal connection, none of the

10   conduct rises to the standard of the shocks the conscience or

11   deliberate indifference, whichever standard you want to use.

12           THE COURT:  All right.  Mr. Bradley, with respect to

13   some of the state law claims, the defendants argue that they

14   should be entitled to dismissal with respect to the post event

15   conduct pursuant to Civil Code Section 47(c).  Do you agree

16   that that section protects them from liability concerning

17   statements that they allegedly made with respect to GL's

18   suicide?

19           MR. BRADLEY:  I do not agree with that.  For reasons

20   that I've articulated.  This is -- they're relying on the

21   common interest privilege.  And *Kashian* explains that the

22   interest applies to defendants who are protecting their own

23   pecuniary or proprietary interest, the relation to something

24   like a contract or business or similar relationship.

25           You don't have that here.  You have statements being

1   made ad hoc, in public.  On these we can certainly amend to

2   state where they occurred, they occurred in the stadium -- or

3   seats up at a softball game.  At an independent softball game

4   at a school yard.  And we've alleged other things that show

5   that there was no pecuniary or proprietary interest.

6          In addition, malice defeats the common interest

7   privilege.  And malice is defined as including not being based

8   on facts, being recklessly untrue basically.  And we've

9   alleged that these statements are untrue, they didn't happen

10  and there's no basis for that.  So we have enough to get past

11  that on this motion.

12         THE COURT:  Well, what -- let's take defendant See,

13  for example.  On your state law claims for defamation,

14  intentional infliction of emotional distress, invasion of

15  privacy.  What factual allegations have you made with respect

16  to anything done or not done by defendant See with respect to

17  those -- that would support those claims?

18         MR. BRADLEY:  I'm not -- I'm going to concede on See,

19  because I did not oppose the government tort claim issue.  He

20  wasn't mentioned in the government tort claim.

21         THE COURT:  All right.

22         MR. BRADLEY:  As for the rest of them, we certainly

23  have identified specific statements that they made, the

24  context of those statements.

25         THE COURT:  With respect to your negligence claim, is

1    it your allegation that the defendants did not do anything to

2    stop bullying at the school?  Or that they attempted to do

3    something, but that their actions were inadequate?  What

4    exactly are you alleging?

5                MR. BRADLEY:  We allege that their actions were

6    grossly inadequate amounting to no effort to stop bullying.

7    And we specifically alleged some of the cases where they did

8    nothing.  They made no effort to stop the publishing, to find

9    out who had published the video and to punish that person.

10   Other things made the situation worse, such as stigmatizing

11   Gloria and other victims as snitches.  And in addition, they

12   failed to follow the policies they were required to follow

13   with respect to bullies.

14               THE COURT:  Just so that I'm clear -- maybe I missed

15   it in the complaint, but you're not alleging that any of the

16   defendants so labeled the decedent, are you?

17               MR. BRADLEY:  I'm sorry, labeled her as a snitch?

18               THE COURT:  Yes.

19               MR. BRADLEY:  Okay.  No, what we're saying -- what

20   we're saying is that --

21               THE COURT:  That other students did and that they

22   didn't do -- what were they to do?

23               MR. BRADLEY:  Well, what we alleged is that

24   they -- that they established policies for Gloria that

25   separated her out as being -- for example, they wanted Gloria

1    to report to the office, Gloria and other girls to report to
2    the office during lunches.  And that then labeled them de
3    facto as snitches in the high school girl community.  So, no,
4    we don't -- we're not saying they explicitly said that they
5    were snitches.  But the policies they implemented labeled them
6    as snitches.
7          THE COURT:  Hmm.  This complaint is a real reach in
8    many, many respects it seems to me.
9          Ms. Murphy, what about plaintiffs' allegations that
10   the district negligently supervised its employees?  The
11   district could still be liable for negligence on the part of
12   individual defendants; correct?
13         MS. MURPHY:  Well, first, Your Honor, I don't see any
14   specific allegations of how the district negligently
15   supervised any employees.  But I assume you're referring to
16   the negligence wrongful death cause of action.  And
17   regardless, there is immunity under the Ed Code for a
18   suicide -- or for conduct that occurs off campus.  And that's
19   exactly what happened here.
20         So the district and the officials would be entitled
21   to immunity under the Ed Code 44808 because they was not on
22   school property at the time of her suicide.  She was not
23   supposed to be under the district's supervision.  And there is
24   simply no exception to that immunity that would apply here.
25         And then in addition, the suicide is the intervening

1   cause absent specific factual allegations that are set forth

2   by the *Tate* and the *Jones* case.  There are no such factual

3   allegations here and plaintiff did not even attempt to meet

4   that standard or argue that standard in the opposition.  So

5   there would be no basis for a negligence cause of action

6   against either the district or the individuals.

7          THE COURT:  In -- hold on one second.  All of these

8   arguments with respect to immunity or privileges, are they all

9   properly reached on a motion to dismiss?  Or in some respects

10  do they turn on evidence and facts?  Why should I be

11  reaching -- if I get there, why should I be reaching all those

12  issues on a motion to dismiss?

13         MS. MURPHY:  Well, I believe that there -- I don't

14  believe there's any factual issue -- and certainly none have

15  been raised -- with respect to where the suicide occurred.  No

16  factual issues about -- that have been raised to suggest that

17  G.L. should have been or was supposed to have been under the

18  district's supervision.  There's simply no factual issue

19  there.  So that, I believe, can and should be decided as a

20  matter of law.

21         With respect to the privileges under Civil Code

22  47(a), we cited specific law there that says that the issue

23  can be decided on a motion for summary judgment.  It is a

24  dispositive motion.  There's no difference with respect to a

25  motion to dismiss where there has been no suggestion of any

1    factual issue.

2            And there's actually two bases for the privileges

3    we've asserted, 47(a), which are statements made in the

4    context of an official duty, as well as 47(c).

5            And I would like to just briefly point out that the

6    case cited by plaintiffs does not limit, nor does any other

7    law, 47(c) to pecuniary or financial interests.  It requires a

8    relationship.  And we've pointed out that there is such a

9    relationship with respect to each of the statements or

10   categories of statements alleged.

11           The first statements were allegedly made during a

12   staff meeting where the issue of the suicide was being

13   addressed.  And clearly there was an interest in everybody at

14   that meeting responding to the suicide and how that affected

15   the students and how that affected the community.

16           The statements that are alleged to have been made by

17   Taylor and Somavia were made allegedly to parents who

18   specifically asked.  And that is 47(c)(3), where the person is

19   requested to give information.  So this -- again, the

20   relationship was established with respect to these

21   administrators and parents of students in the community with

22   respect to, again, the common interest being the -- dealing

23   with how the suicide affected the school and the community.

24           And then there's a statement by an unnamed counselor

25   where it's, again, specifically alleged that this counselor

1  was asked by somebody seeking counseling for this issue, "Why

2  did she commit suicide?"  And that person allegedly made a

3  comment that the suicide was because of problems at home.

4       So I don't believe there are any factual issues that

5  would prevent deciding the issue as a matter of law.  And I

6  don't believe there's been any factual -- or any

7  representation that there are any facts different that would

8  raise such a factual issue.

9       THE COURT:  Mr. Bradley, anything you want to add

10 before I take the motion under submission?

11      MR. BRADLEY:  Yeah, just briefly respond to the last

12 point.  I was literally reading from Hui, H-U-I, *versus*

13 *Sturbaum*, S-T-U-R-B-A-U-M, 222 Cal. App. 4th 1109, which was

14 citing *Kashian versus Harriman* on the issue of how we define

15 common interests.  I was literally reading from the case.  And

16 it specifically says that the common interest is restricted to

17 proprietary or narrow privacy interest -- private interest

18 rather.  Otherwise everything becomes a common interest and

19 there is no defamation.  So, of course, obviously I'd ask the

20 Court to consider that.

21      On the issue of Education Code 44808, the negligence

22 occurred at the school where there was a lack of proper

23 supervision.  That's all alleged.

24      With respect to the issue of 47(c), there's clearly a

25 factual issue here which has to do with whether or not the

1    defendants who made the statements knew that they were not

2    telling the truth or what the source of information they had,

3    which would vitiate the privilege by showing malice.

4            As for the official duty, we have no explanation of

5    what this duty was.  They refer to "postvention" and refer to

6    a specific statute.  But based on the facts, which can be

7    judicially noticed, that policy didn't go into effect until

8    after Gloria's suicide.  So there's a lot of factual issues

9    here on those defenses.

10           And on that basis, Your Honor, I would submit.

11           THE COURT:  Ms. Murphy, just very briefly.  It can't

12   possibly be California law that no matter how outrageously

13   false a statement is that's made postvention, as you suggest,

14   that it's protected.  I mean, that can't possibly be right.

15           MS. MURPHY:  Well, Your Honor, that's not what we're

16   saying.  We're saying under the circumstances where you have a

17   staff meeting, where a principal calls staff in to address

18   this issue and to instruct her staff on how they should be

19   responding to questions from students, from parents.

20   Regardless of what board policy may or may not have been in

21   effect at the time, the legislature had declared, as of that

22   time, that it was the school's duty to respond to those

23   issues.

24           As part of that, they were required to implement a

25   policy that was in the works.  But the legislature had

1  declared that that was an official duty of the school to do

2  that.  And that is what the principal was doing in that

3  circumstance.

4         The same is true for the other administrators, who

5  regardless of where they were, were doing the same thing,

6  carrying out that official duty and responding to questions

7  from members of the school community.  And in the case of the

8  counselor, specifically to a question asked by somebody

9  seeking counseling.  So --

10         THE COURT:  But if --

11         MS. MURPHY:  -- in those instances --

12         THE COURT:  If plaintiffs' allegation is, look, yeah,

13  they did that.  And in doing that, they falsely, deliberately,

14  intentional and with malice ascribed a cause of the suicide to

15  something they knew was not the case, how could that possibly

16  be protected?

17         MS. MURPHY:  Well, I -- the facts have not been

18  alleged.  There has -- first of all, I believe the

19  statements -- the statements, the alleged statements, quite

20  clearly are opinions.  Nobody can know why G.L. committed

21  suicide.  There's not been a note establishing that she --

22         THE COURT:  Which I think would suggest why school

23  officials shouldn't be offering opinions as to what caused the

24  tragic event.  I mean --

25         MS. MURPHY:  Right.  But opinions are not defamation.

1  And --

2          THE COURT:  But if they're --

3          MS. MURPHY:  -- that is not --

4          THE COURT:  If they're intentionally false, they

5  would be.

6          MS. MURPHY:  Well, and there's been no such

7  allegation that there was any malice or that the statement

8  itself is false.  I mean, it's the parents' opinion that that

9  wasn't the cause of the suicide.  But if these statements were

10 made -- and we're not conceding that they were -- they are on

11 their face opinions.  And malice doesn't negate that.  If

12 we're talking about -- not that I believe any has been shown.

13 I believe these people -- and there's nothing alleged to the

14 contrary -- were in good faith addressing an issue and

15 attempting, as best they could, to deal with the effect that

16 this was having on the school as was their official duty to do

17 so.

18         Malice, even if it were alleged, does not defeat the

19 47(a) privilege.  And I don't believe there are specific facts

20 or any facts to show that any of these statements were made

21 with malice.  It's not enough to simply say they were not

22 true, according to the plaintiff.  And that's all that's been

23 alleged here.

24         THE COURT:  I'm troubled by what you just said.

25 Because I think -- in fact, I'm reading it.  Malice, even if

1    it were alleged, does not defeat the 47(a) privilege.  That

2    sounds like what you're telling me is, no, it is our position

3    that school officials, in response to a suicide, can

4    intentionally and with malice ascribe a cause to the suicide

5    that they know is not true and still are protected by

6    privilege under 47(a).  And I'll say once again, I cannot

7    believe that that could possibly be the state of the law.

8             MS. MURPHY:  Well, I -- that's not exactly what I

9    said.

10            THE COURT:  I read it.  I just read it.  That's what

11   you said.

12            MS. MURPHY:  Well -- what I'm saying.  47(a) is an

13   absolute privilege.  And so if the circumstances of the

14   privilege are established, if there was -- if these acts or

15   these statements were made in the context of an official duty.

16   And we believe they were.  They've specifically been alleged

17   to have been in the context of an official duty.  Then it is

18   an absolute privilege.

19            THE COURT:  So even if intentionally false, knowingly

20   intentionally false, complete and total protection?

21            MS. MURPHY:  Yes.  It's an absolute privilege.

22            THE COURT:  Wow.  You better hope I don't reach that

23   issue.

24            All right.  As you can tell from my comments at the

25   outset, I am concerned about whether or not the complaint

1   states a cognizable claim under the Fourteenth Amendment.  I'm

2   going to be taking a hard look at the complaint and its

3   allegations as well as the law.

4        I'll warn you, Mr. Bradley, I mean, I'm going to take

5   you at your word.  I think you've told me we've alleged all

6   the facts we can allege in support of that claim.  And if

7   that's the case, and I find that it's insufficient, then I

8   most likely would dismiss without leave to amend.

9        And if I do that, I'd almost certainly decline to

10  exercise jurisdiction over the state law claims and would

11  never get to what I find to be the rather startling argument

12  that 47(a) is an absolute privilege that shields school

13  officials from liability no matter how intentionally false and

14  destructive their statements after the fact are.

15       But it may take a while.  Got a lot of motions under

16  submission in advance.  So the motion is taken under

17  submission.  A written order will issue.  Thank you, counsel.

18       MR. BRADLEY:  Thank you, Your Honor.

19       MS. MURPHY:  Thank you, Your Honor.

20   (The proceedings were concluded at 11:18 a.m.)

21

22       I, KAREN HOOVEN, Official Reporter, do hereby certify

23  that the foregoing transcript as true and correct.

24

25  DATED:  1st of March, 2019      /s/  Karen Hooven
                                    KAREN HOOVEN, RMR-CRR