UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANDIN and CARMEN LANDIN,<br><br>Plaintiffs,<br><br>v.<br><br>VISALIA UNIFIED SCHOOL DISTRICT, IRENE DELCID, JATHOR SEE, SHANNON TAYLOR, and DEDE SOMAVIA,<br><br>Defendants. | No. 1:18-cv-00380-DAD-SKO<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT<br><br>(Doc. No. 16) |

This matter came before the court on defendants' motion to dismiss for failure to state a claim and motion for a more definite statement. (Doc. No. 16.) A hearing on the motions was held on September 18, 2018. Attorney Peter Sean Bradley appeared telephonically on behalf of plaintiffs. Attorney Kellie M. Murphy appeared telephonically on behalf of defendants. Having reviewed the parties' briefing and heard oral argument, and for the reasons set forth below, the court will grant defendants' motion to dismiss and deny their motion for a more definite statement as moot.

**BACKGROUND**

Chris Landin and Carmen Landin ("plaintiffs") bring this action against defendants Visalia Unified School District ("VUSD"), Irene Davis, Jathor See, Shannon Taylor, and Dedi

1

Somavia.[1] The complaint alleges as follows. Plaintiffs' eldest daughter, decedent GL, attended Divisadero Middle School ("DMS") in 2015 and 2016 as a seventh and eighth grader. (Doc. No. 1 ("Compl.") at ¶ 23.) DMS was managed and controlled by VUSD. (*Id.* at ¶ 2.) Defendant Davis was the principal of DMS. (*Id.* at ¶ 6.) Defendant See was a vice principal at DMS. (*Id.*) Defendant Taylor was a vice principal at DMS who became principal after defendant Davis was reassigned to a different school. (*Id.*) The VUSD Board appointed defendant Taylor as the 2016–2017 safety officer of DMS, tasking her with the responsibility of hearing complaints of harassment, discrimination, and bullying of students. (*Id.* at ¶¶ 6, 19.) Defendant Somavia was an administrator for VUSD. (*Id.* at ¶ 6.) Plaintiffs allege that all individual defendants acted at the relevant times within the course and scope of their employment as VUSD employees. (*Id.*)

According to plaintiffs, a group of female students began to verbally and physically bully GL during her seventh-grade year. (*Id.* at ¶ 24.) The group of female students frequently and pervasively taunted and mocked GL at school and on social media, calling her "gender-derogatory" terms such as "whore" and "slut." (*Id.*) GL was physically attacked on the last day of seventh grade. (*Id.* at ¶ 25.) GL was cornered and beaten by a female bully in the presence of other students on the DMS campus. (*Id.*) A recording of the incident, which plaintiffs allege was an act of bullying in itself, was publicly posted on social media to denigrate and humiliate GL. (*Id.*) The individual defendants failed to both prevent the assault and protect GL despite being notified and made aware of the bullying activities. (*Id.*) The culture of bullying at DMS was so pervasive that parents of female students regularly reported bullying against their children and complained of the administration's failure to adequately address those bullying activities. (*Id.* at ¶ 26.) Defendants failed to inform plaintiffs and other parents of their legal right to file a written complaint about bullying in the school environment, their ability to appeal defendants' "ineffective resolution" of their complaints to the California Department of Education, and their

/////

---

[1] Defendants note that plaintiffs erroneously sued Irene Davis as "Irene DelCid" and Dedi Somavia as "Dede Somavia." (Doc. No. 16-1 at 1.) The court will hereinafter refer to the individual defendants by their last names and collectively as "the individual defendants." All the named defendants, including VUSD, are hereinafter referred to collectively as "defendants."

right to contact the U.S. Department of Education regarding their concerns in this regard. (*Id.* at ¶ 30.)

GL continued to be harassed and bullied during her eighth-grade year as well. (*Id.* at ¶ 29.) The group of female students continued to taunt, mock, and name-call her at school and on social media. (*Id.* at ¶ 31.) The group of female students threw trash at GL and continued to call her "gender-derogatory terms" such as "whore," "bitch," and "slut." (*Id.* at ¶ 29.) GL also received Snapchat messages containing verbal threats. (*Id.* at ¶ 31.) Despite constant reports and complaints from parents, the individual defendants did not discipline and control the female students who continued to bully GL. (*Id.*)

In early February 2017, a female student (identified in the complaint as "Student #1") threatened to physically attack GL at school. (*Id.* at ¶ 32.) Plaintiffs reported this threat to defendants hoping that the school would protect GL, but GL was nevertheless attacked during a lunch hour. (*Id.*) Student #1 pulled GL by the hair, caused her to fall backwards from her seat, and proceeded to strike and scratch her. (*Id.*) GL attempted to defend herself as best she could against Student #1 until the attack was broken up by teachers and other students. (*Id.* at ¶¶ 32, 33.) The entire incident was recorded and posted on social media to embarrass and humiliate GL. (*Id.* at ¶¶ 33, 38.) Defendants do not publicly provide "private and confidential" information about student discipline. (*Id.* at ¶ 36.) But given Student #1's history of bullying, plaintiffs allege that she "received slight [and ineffective] discipline" for the unprovoked attack. (*Id.* at ¶¶ 33, 35, 37.) Plaintiffs also allege that defendant Taylor's suggestion that GL be suspended for her participation in the attack was "grossly inappropriate" because GL was the victim of the attack. (*Id.* at ¶ 33.)

Later in February 2017, faced with having to attend DMS after the President's Day holiday, GL tragically took her life. (*Id.* at ¶ 40.) Although plaintiffs were unaware of the extent of GL's despondency, they allege that "[a]fter the publication of the video and up until her death, GL felt embarrassed, humiliated, stigmatized and ostracized." (*Id.* at ¶¶ 39, 40.) Plaintiffs claim that GL felt isolated, unsafe, and helpless believing that she would continue to be bullied as defendants had been unable to control and address the bullying she experienced at school. (*Id.*

at ¶ 39.) Lastly, plaintiffs allege that VUSD "published and republished false and harmful statements" about them after GL's death. (*Id.* at ¶ 43–45.)

On March 21, 2018, plaintiffs commenced this action by filing their complaint against defendants. The complaint asserts five causes of action for: 1) defamation; 2) intentional infliction of emotional distress; 3) invasion of privacy; 4) a constitutional violation under 42 U.S.C. §1983; and 5) wrongful death. (*Id.* at 12–19.) On August 3, 2018, Defendants filed a motion to dismiss plaintiffs' complaint. (Doc. No. 16-1.) Defendants concurrently filed a motion for a more definite statement with respect to plaintiffs' fourth claim brought under 42 U.S.C. § 1983. (*Id.*) Plaintiffs filed their opposition to the motions on September 4, 2018. (Doc. No. 17.) Defendants filed their reply brief on September 11, 2018. (Doc. No. 18.)

## LEGAL STANDARD

A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## DISCUSSION

**A.     Federal Claim:  42 U.S.C. § 1983**

Plaintiffs bring their only federal claim for violation of their constitutional right to familial association under 42 U.S.C. § 1983 against the individual defendants. (Compl. at ¶ 60.) Defendants move to dismiss the complaint, arguing that plaintiffs have not alleged facts that state a claim upon which relief could be granted. (Doc. No. 16-1 at 4.) "To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right." *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). Here, plaintiffs allege that the individual defendants were acting under color of state law. (Compl. at ¶ 8.) The sole issue posed by the pending motion to dismiss this cause of action is whether plaintiffs have adequately alleged that the conduct of the individual defendants deprived plaintiffs of a constitutional right.

A parent has a Fourteenth Amendment liberty interest in the companionship and society of his or her child. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010); *see also Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057–58 (9th Cir. 2018)  A state is generally not liable for its omissions, and does not owe a duty to protect individuals from third parties. *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (citing *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). However, a failure to protect can give rise to a substantive due process claim "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference'
/////

to a 'known or obvious danger.'" *Id.* at 971–72 (citations omitted).[2] Because plaintiffs allege that the deliberate indifference of the individual defendants, their failure to protect GL, and their failure to assure her that she would no longer be bullied at DMS resulted in a deprivation of plaintiffs' right to familial association, (Compl. at ¶ 65), plaintiffs' § 1983 claim is based on alleged omissions by the individual defendants. Thus, the court will consider the allegations under the state-created danger exception.[3] *See Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012).

There are two requirements in order for the state-created danger exception to apply. "First, the exception applies only where there is affirmative conduct on the part of the state in placing the plaintiff in danger." *Patel*, 648 F.3d at 974; *see also Henry A.,* 678 F.3d at 1002; *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006); *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (noting that the "critical distinction" for determining liability is "between state action and inaction in placing an individual at risk"). "Second, the exception applies only where the state acts with deliberate indifference to a known or obvious danger." *Patel*, 648 F.3d at 974 (internal quotations and citations omitted); *see also Henry A.*, 678 F.3d at 1002; *Kennedy*, 439 F.3d at 1062–64. Deliberate indifference "requires a culpable mental state": the defendant must "know[] that something is going to happen but ignore[] the risk

/////

/////

---

[2] This exception is called the state-created danger exception.

[3] In addition to the state-created danger exception, the "special-relationship" exception can also give rise to a § 1983 claim. *Patel*, 648 F.3d at 971–72; *see also Henry A.*, 678 F.3d at 998. The special-relationship exception "applies when a state 'takes a person into its custody and holds him there against his will.'" *Patel*, 648 F.3d at 972 (quoting *DeShaney*, 489 U.S. at 200); *see also Henry A.*, 678 F.3d at 998 ("[W]hen a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being."). Plaintiffs note that California law compels parents to enroll their children in school, but do not assert that the "special-relationship" exception applies here. (Compl. at ¶ 13.) Moreover, the Ninth Circuit has held that compulsory school attendance does not create the requisite "custody" for a special relationship to exist between students and their school. *Patel*, 648 F.3d at 973. Because plaintiffs do not contend that the special-relationship exception is applicable here the court need not address it further.

and expose[] [the plaintiff] to it."[4] *Patel*, 648 F.3d at 974 (citing *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)); *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018).

Construing the allegations of the complaint in a light most favorable to the plaintiffs, the court concludes that plaintiffs do not state a plausible claim for relief based on the individual defendants' alleged conduct. Plaintiffs generally allege several failures on the DMS administrators' part: defendants were aware that GL was continuously bullied at DMS but "failed to adequately investigate the bullying and/or control the conduct of bullying at the school"; defendants knew GL would be attacked on her last day of seventh grade but failed to take action; defendants "knew or with reasonable investigation should have known" that GL's attack would be published as a video on social media but failed to investigate or discipline any students; defendants knew that female bullies were harassing GL and other female students in the eighth grade but did not protect GL or other students; defendants knew GL was going to be attacked in February of 2017 and that the attack would be published online, but did nothing to prevent the fight or discipline the students who recorded and published it; plaintiffs were denied an audience at a public meeting before the VUSD Board because the board was too busy; and defendants failed to "maintain an environment that was safe and conducive to education for GL." (*Id.* at ¶¶ 63–64.)

The only factual allegations advanced by plaintiffs in support of their fourth cause of action in which they even mention the individual defendants are that: (1) plaintiffs were prevented from speaking to defendant Davis to voice their concerns; and (2) complaints by

---

[4] In their briefs, the parties debate the applicable standard governing substantive due process claims where the harm arises from official conduct. Plaintiffs contend that the standard for actions based on deprivation of familial association is "'deliberate indifference, not 'shocks the conscience.'" (Doc. No. 17 at 5.) Defendants argue the applicable standard is "shocks the conscience," and the required state of mind is "deliberate intent" or "actual knowledge." (*See* Doc. Nos. 16-1 at 3–4; 18 at 2–3.) Because plaintiffs' § 1983 claim is based solely on alleged omissions by the individual defendants, it must be analyzed under the state-created danger exceptions. *See Patel*, 648 F.3d at 972. The second prong of the state-created danger exception requires deliberate indifference and that standard is the one that must be applied in assessing plaintiffs' claim. However because plaintiffs' complaint fails to satisfy the first prong of this standard the court need not reach the question of whether the second prong has been satisfied.

parents to defendant See resulted in no effective remedial action being taken. (*Id.* at ¶ 26, 64.) However, these allegations describe only what the individual defendants allegedly failed to do, not what actions they affirmatively took. Notably, the complaint is completely silent as to and conduct engaged in by defendant Somavia. Although plaintiffs claim in conclusory fashion that they were "denied [GL's] companionship as a result of the actions or inaction of the Defendants alleged herein," they have alleged only inaction and no affirmative acts on the part of the individual defendants. *See Lamberth v. Clark Cty. Sch. Dist.* (*Lamberth I*), No. 2:14-cv-02044-APG, 2015 WL 4760696, at *5 (D. Nev. Aug. 12, 2015) (finding that the defendants' alleged "omissions do not qualify as affirmative acts. Regardless of how it is phrased, the substance of these claims is that the defendants failed to render aid."), *aff'd*, 698 Fed. App'x 387 (9th Cir. 2017). A complaint that pleads only inaction and no wrongful affirmative conduct is inadequate. *See Pauluk v. Savage,* 836 F.3d 1117, 1124 (9th Cir. 2016) ("First, a plaintiff must show that the state engaged in 'affirmative conduct' that placed him or her in danger."); *Henry A.,* 678 F.3d at 1002–03 ("But the point of the state-created danger doctrine is that the *affirmative actions* of a state official 'create[d] or expose[d] an individual to a danger which he or she would not have otherwise faced.'" ) (quoting *Kennedy*, 439 F.3d at 1061) (emphasis added); *see also Lamberth v. Clark Cty. Sch. Dist.* (*Lamberth II*), 698 Fed. App'x 387, 388 (9th Cir. 2017)[5] (upholding district court's dismissal of the complaint for pleading "only of [school officials'] inaction—not wrongful affirmative conduct" that placed a suicide victim in harm's way). Elsewhere in their complaint, plaintiffs allege that defendant Taylor's suggestion that GL be suspended after she was physically attacked in the lunch room was "grossly inappropriate." (Compl. at ¶ 33.) But, once again, plaintiffs do not allege that defendant Taylor's suggestion was "affirmative conduct that placed [GL] in harm's way." *See Lamberth II*, 698 Fed. App'x at 388.

    The undersigned has fully considered whether plaintiffs might be able to amend the complaint to state cognizable claims. The Federal Rules of Civil Procedure provide that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  Nevertheless, leave to amend need not be granted where the amendment: (1) prejudices the

2  opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is

3  futile. *See Amerisource Bergen Corp. v. Dialysis W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

4  Where an amendment will not affect the outcome of the action, the amendment is futile and

5  should not be permitted. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d

6  1276, 1293 (9th Cir. 1983) (upholding the district court's decision to deny leave to amend after

7  plaintiff's counsel "could only answer vaguely" when "[a]sked the purpose of amendment").

8  At the hearing on the pending motion, the court asked plaintiffs' counsel whether any

9  additional facts could be alleged, such as a writing left attributing this tragic suicide to what had

10 been occurring at school, a discussion between GL and a counselor, or even a discussion between

11 GL and the plaintiffs. Plaintiffs' counsel conceded at that time that all the facts of which

12 plaintiffs are aware have been pled in support of this cause of action. Since there are no

13 additional facts that plaintiffs can allege, and because the complaint's factual allegations are

14 inadequate and fail to state a cognizable § 1983 claim, the court concludes that granting of leave

15 to amend would be futile.

16 Accordingly, plaintiffs' fourth cause of action will be dismissed without leave to amend.

17 **B.    State Claims**

18 This case was originally filed in this court based on federal question jurisdiction. (*See*

19 Compl. at ¶ 10.) The court has concluded that defendants' motion to dismiss must be granted as

20 to plaintiffs' sole federal claim, leaving only state law causes of action remaining. Once all

21 federal claims have been dismissed from a case, whether to retain jurisdiction over any remaining

22 state law claims is left to the discretion of the district court. *See* 28 U.S.C. § 1367(c)(3); *Acri v.*

23 *Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997); *Moore v. Kayport Package Exp., Inc.*,

24 885 F.2d 531, 537 (9th Cir. 1989). Generally, if federal claims are dismissed prior to trial, state

25 law claims should be remanded to state court "both as a matter of comity and to promote justice

26 between the parties, by procuring for them a surer-footed reading of applicable law." *United*

27 *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484

28 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Acri*, 114 F.3d at 1000. If the court declines to exercise supplemental jurisdiction over the state-law claims in a case initially filed in federal court, the court must dismiss those claims without prejudice. *See Carnegie-Mellon Univ.*, 484 U.S. at 350–51 ("When the balance of these factors indicates that a case properly belongs in state court, . . . the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice . . . [where] the plaintiff [has] filed his suit in federal court, remand [is] not an option."); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994). The factors to be weighed are "the values of judicial economy, convenience, fairness, and comity." *Id.* at 350.

The court concludes that the exercise of supplemental jurisdiction is not warranted in this case. The parties have raised multiple arguments related to the application of California law to plaintiffs' state law claims for defamation, intentional infliction of emotional distress, invasion of privacy, and wrongful death. These disputes are best resolved by state courts, since the role of the federal courts in addressing state law claims is to attempt to divine how the California Supreme Court would determine any particular issue. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994). This is a task for which the state courts are better suited and declining to exercise supplemental jurisdiction under such circumstances is appropriately respectful of the dual sovereignty of the federal government and the state of California. Moreover, this is the first motion this court has addressed in this litigation and concerns regarding judicial economy do not compel the exercise of supplemental jurisdiction over plaintiffs' remaining state law claims. Similarly, all parties are in California and are represented by California lawyers, thereby minimizing any concerns of convenience or fairness. In sum, the court concludes that the interests of comity and justice are best served by this court declining the

/////

/////

/////

/////

exercise of supplemental jurisdiction over plaintiffs' remaining state law claims.[6] Plaintiffs' state law claims will therefore be dismissed without prejudice.[7]

## CONCLUSION

For the reasons set forth above:

1. Defendants' motion to dismiss plaintiffs' fourth cause of action for failure to state a cognizable claim (Doc. No. 16-1) is granted without leave to amend;

2. Defendants' motion for a more definite statement (Doc. No. 16-1) is denied as having been rendered moot;

3. Defendants' request for judicial notice (Doc. No. 16-2) is denied;

4. The court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims, and those claims are dismissed without prejudice to their filing in state court; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **September 30, 2019**

                                       /s/ Dale A. Drozd
                                       UNITED STATES DISTRICT JUDGE

---

[6] The court also notes that any applicable statute of limitations under state law has been tolled during the pendency of this action. *See* 28 U.S.C. § 1367(d) (tolling the limitation period for any claim asserted in a federal action by way of supplemental jurisdiction both while the claim is pending "and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period"); *Artis v. District of Columbia*, ___ U.S. ___, ___, 138 S. Ct. 594, 598 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock.").

[7] Defendants request judicial notice of plaintiffs' tort claim presented to the VUSD on August 10, 2017. (Doc. No. 16-2 at Ex A.) Pursuant to the Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiffs' complaint explicitly refers to their submission of the claim to demonstrate compliance with California Government Code §§ 910, 910.2, and 910.4. (*See* Compl. at ¶12.) Defendants request judicial notice of the exhibit because compliance is an essential element to all of plaintiffs' state law claims. (Doc. No. 16-2 at 3.) Because the court is dismissing plaintiffs' state law claims without prejudice, the court will not take judicial notice of the tort claim.